LEVI DENNEN *versus* CHARLES H. HASKELL.

A promissory note, payable on demand, which was negotiated within thirty days after its date, to a *bona fide* purchaser, will not be considered as having been overdue and dishonored, so as to subject the indorsee to any equities existing between the original parties to it.

Where a party excepts to the admission of any testimony given at the trial of his action, and such testimony was admissible, in the case, for any purpose, the exceptions will not be sustained, unless it appears affirmatively, by the bill of exceptions, that the testimony was admitted for an unauthorized purpose.

ASSUMPSIT on "a promissory note, [of $100,] signed by defendant, dated April 20, 1857, and payable to Benjamin Ryerson, or order, on demand, with interest, and by said Ryerson indorsed."

The case was tried at April term, 1858, GOODENOW, J., presiding; and was brought to the law court on EXCEPTIONS taken by plaintiff. The matters excepted to appear in the opinion of the Court.

*Frye,* of counsel for plaintiff, argued in support of the exceptions.

*Record & Walton, contra.*

The opinion of the Court was drawn up by

MAY, J.—The exceptions in this case are very inartificially drawn. It does not appear from them which was the prevailing party, unless the fact may be inferred from the circumstance that the plaintiff is the excepting party. Whether the

cause was submitted to a jury or to the presiding Judge, is not stated. There is, therefore, nothing in the case from which we are enabled to determine, whether the plaintiff was an aggrieved party, in any such sense as of right to be entitled to exceptions.

The note in suit appears to have been indorsed before the expiration of thirty days from its date. In the absence of all evidence, tending to justify a different conclusion, we are not prepared to say, that a note like the present, payable on demand, is overdue and dishonored, at the expiration of thirty days. We think it is not, and that an indorsement, made to a *bona fide* holder, at any time within that period, will shut out any equities that may exist between the original parties. *Ranger* v. *Carey & al.*, 1 Met. 369; 3 Hill, 582.

The testimony of Downer Harris, that, on the morning of May 17, 1857, he inquired as to the note, and Ryerson, the payee, informed him that he had found a man to take it, does not appear to have been objected to. If it had been, it is not perceived upon what ground it was admissible. Ryerson was not then the holder of the note, and no testimony is recited in the case showing that he had any interest in it at the time, that would make his declarations admissible. The testimony, therefore, is simply hearsay. It is not perceived, however, how the plaintiff could have been injured by it, as its direct tendency was to show the truth of the plaintiff's proposition, that the note was indorsed previous to the expiration of thirty days. The fact, that Ryerson sought a man to take it, would not affect the holder, unless he had some reason to know or suspect that some equitable defence to the note then existed, which does not appear.

A contract between Ryerson and the defendant, bearing even date with the note in suit, is a part of the case. By this it appears that Ryerson agreed to sell and deliver, and the defendant to purchase, all the horses, carriages and harnesses then used by said Ryerson in the hack business, at a price to be determined by James Dingley, of Auburn, and Alvin Howard, of Lewiston, they being authorized, in case of

disagreement, to select a third man, and the contract further provided that, in case either party should fail to perform the agreement, he should "pay to the other the sum of one hundred dollars as liquidated, fixed and settled damages." This contract, and the note in suit, are both witnessed by the same person. It was claimed by the plaintiff, that the note in suit was a settlement of said forfeiture.

The defendant introduced James Dingley, one of the appraisers, as a witness, for the purpose of showing that misstatements were made to the appraisers at the time of the appraisal, by Ryerson; and he testified that Ryerson said, one pair of the horses was as good and sound as when he purchased them. This testimony was objected to, on the ground that the appraisers were not a tribunal to *try* the value of the horses, and listen to evidence, but were to make up their judgment as experts from an examination of the property. The objection was overruled. Upon looking into the contract, no such limitation upon the powers of the appraisers is found. They seem to have been left to ascertain the value of the property in such manner as they might deem best. It was, undoubtedly, the intention of the parties, that they should make up their judgment from their knowledge of such property, and such facts in relation to it as they might learn. No objection to this mode appears to have been made at the time of the appraisal. Under these circumstances, the objection urged against the admission of the testimony is invalid.

There was also testimony from Timothy E. Fogg, tending to show that one of the horses, agreed to be sold, had been foundered while in the possession of Ryerson, and before the appraisal. This testimony was objected to by the defendant, not only for the same reason urged against that of Dingley, but also on the ground that there was no evidence to show that, if the horse was foundered, the fact was unknown to the appraisers and was not considered by them in their appraisal. The purpose for which this testimony was admitted, does not distinctly appear. If it was simply for the purpose of showing that the appraisers had erred in their estimation of the

value, it was not admissible, because their judgment as to that, in the absence of fraud, was final upon the parties. If, on the other hand, it was admitted for the very purpose of showing fraud to have been practiced upon the appraisers by Ryerson, so as to obtain an over valuation of the property, then it might have had a tendency, in connection with other facts, such as an affirmation of the soundness of the horse, and knowledge of its falsity by Ryerson, to establish such fraud, and the establishment of such fraud might have imposed upon the plaintiff the necessity of proving that he came by the note in the usual course of business, for a valuable consideration, and unattended with any circumstances justly calculated to awaken suspicion; and this would be so, notwithstanding Ryerson had found a man to take it before it was dishonored. *Perrin* v. *Noyes,* 39 Maine, 384.

As the testimony, therefore, might have been admissible, and the facts recited in the exceptions do not affirmatively show that it was not, the exceptions cannot be sustained. If a party excepts to the admission of testimony, and it is apparent that it was admissible for any purpose, the excepting party has no ground of complaint if his exceptions are overruled, unless he shows affirmatively that it was in fact admitted for an unauthorized purpose, and this should appear upon the face of the exceptions. We are, therefore, brought to the conclusion that, if the exceptions in this case were allowable, they must be overruled.          *Exceptions overruled.*

TENNEY, C. J., HATHAWAY, CUTTING, GOODENOW, and DAVIS, J. J., concurred.